**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ATREYI CHAKRABARTI, et al.,** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil No. **21-1945 PJM** |
| **UNITED STATES CITIZENSHIP AND** | * | |
| **IMMIGRATION SERVICES, et al.,** | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM OPINION**

United States immigration law provides foreign nationals with opportunities to lawfully live and work in the United States, including through employment-based immigrant visas. Through these visas, foreign nationals can become lawful permanent residents of the country.

On August 13, 2021, Plaintiffs, 196 Indian and Chinese nationals, filed an Amended Complaint against the U.S. Citizen and Immigration Services ("USCIS") and its Director, Ur Jaddou, alleging unreasonable delay in the adjudication of their employment-based visa applications. *See* Am. Compl., ECF No. 11. Plaintiffs seek a preliminary injunction that would require USCIS to adjudicate all their applications by September 30, 2021—the end of USCIS's fiscal year—or, alternatively, an order that would require USCIS to hold all unissued employment-based visas over to the 2022 fiscal year so that Plaintiffs might avail themselves of them. *See* Mot. for Prelim. Inj. & Mem. in Supp. Thereof, ECF No. 19 ("Mot. for Prelim. Inj.").

Defendants concede that, while the processing times Plaintiffs argue for are not necessarily unreasonable, inasmuch as each Plaintiff's claims turn on highly individualized factors, their claims would be more appropriately heard separately in certain other federal judicial districts. Accordingly, Defendants have moved to sever each individual Plaintiff's case and have it

transferred to the federal district court covering the service center or field office where the Plaintiff's immigration application is currently pending or being processed.[1]   Alternatively, Defendants ask the Court to deny Plaintiffs' motion for preliminary injunction and dismiss the case.   *See* Defs. Resp. in Opp'n to Mot. for Prelim. Inj. and Mot. to Transfer or Dismiss & Mem. in Supp. Thereof, ECF Nos. 28, 28-1 ("Defs. Mot.").

Plaintiffs urge the Court to keep their claims in one consolidated case in the District of Maryland, essentially in order to further judicial economy.[2] *See* Reply to Resp. to Mot. for Prelim. Inj. and Resp. in Opp'n to Mot. to Transfer or Dismiss, ECF No. 32 ("Reply").  Defendants adduce a number of arguments why the cases should be severed and transferred, which the Court finds persuasive and which it now proceeds to discuss.  Accordingly, the Court **GRANTS** Defendants' Motion to Transfer, will **SEVER** each Plaintiff's claim into a separate actions, and will direct the Clerk to transfer each Plaintiff's claim to the federal district court covering the USCIS service center or field office where the Plaintiff's application is currently pending or being processed.

---

[1] The Field Operations Directorate of USCIS, one of three directorates responsible for the accurate and timely processing of applications and petitions, "processes applications and petitions that require interviews and are not asylum related at its 88 field offices, 16 district offices, and four regional offices across the country."  U.S. Government Accountability Office, GAO-21-529, *Report to Congressional Requesters on U.S. Citizenship and Immigration Services: Actions Needed to Address Pending Caseload* (hereinafter, "GAO Report"), August 18, 2021, p. 8.

[2] The District of Maryland has recently become the collecting point for a flood of visa filings because, at the end of 2020, the USCIS relocated its national headquarters from the District of Columbia to Camp Springs, Maryland, which is within this Court's jurisdiction.  To give an idea of the recent crush of filings, the United States Attorney's Office for the District of Maryland advises that monthly visa filings in this District increased from one filing in January 2021, to 16, 32, and 42, in April, May, and June of this year, respectively.  *See* ECF No. 27.  As of this writing, some 150 visa cases are pending in this District, all of which were filed after May 1, 2021, the great majority of which have been filed by non-resident petitioners. *Id.*  There is no telling how many more such petitions would follow in this District were the Court to rule that the present suit should remain here.

## I.

Generally, a foreign national wishing to relocate to the United States must first obtain an immigrant visa. *Requirements for Immigrant and Nonimmigrant Visas*, U.S. Customs and Border Protection (Jan 3. 2018).[3]  Congress, through the Immigration and Nationality Act ("INA"), grants the Executive Branch broad authority over immigration. *See* 8 U.S.C. § 1101. The INA specifically charges the Secretary of Homeland Security with the administration and enforcement of immigration laws. *Id.* § 1103(a)(1). The Secretary has delegated this authority to the U.S. Citizenship and Immigration Services ("USCIS"), an agency within the Department of Homeland Security. *See* 8 C.F.R. §§ 2.1, 100.1. Among other things, USCIS is responsible for processing immigrant visa applications, including applications for permanent residence. *See id.* § 204.[4]

Permanent residence applications are categorized into family-based, employment-based, and diversity groups. Pub. L. No. 101-649, 104 Stat. 4978. For an individual to be considered for an employment-based immigrant visa, his or her prospective employer must first file an Immigrant Petition for Alien Worker (Form I-140) with USCIS on behalf of the prospective employee. 8 U.S.C. § 1153(b)(1)(C). After USCIS approves an Immigrant Petition for Alien Worker, an individual present in the United States may seek lawful permanent residence via an "adjustment of status." *Id.* §§ 1101(a)(16), 1255(a).

By statute, Congress has established numerical limits for the number of visas to be granted in a fiscal year in each of the family-based, employment-based, and diversity-based visa

---

[3] Available at www.cbp.gov/travel/international-visitors.

[4] "Each year, the Department of Homeland Security's (DHS) U.S. Citizenship and Immigration Services (USCIS) processes millions of applications and petitions for person seeking to visit the U.S. for study, work, or other temporary activities; reside in the U.S. on a permanent basis; or become U.S. citizens . . . USCIS is the federal agency charged with adjudicating applications and petitions for immigration benefits, such as humanitarian relief, adjustment to lawful permanent resident status, change or extension of nonimmigrant (i.e. temporary) status, naturalization, and employment authorization."  GAO Report, p. 1.

categories.  *See* 8 U.S.C. § 1151.  But Congress has also established a "rollover" mechanism for the family-based and employment-based visa categories.  8 U.S.C. § 1151(c)(4).  Under this mechanism, at the end of each fiscal year, any unused visas numbers from one category automatically roll over to the other category, which creates additional visa availability above the statutory ceiling for the following fiscal year.  *Id.*  Thus, at the end of fiscal year 2020, fewer family-based visas were used than were allocated by statute, resulting in additional visa numbers rolling over to the employment-based group for fiscal year 2021 (i.e., from October 1, 2020 to September 30, 2021).  These rolled-over visas, however, if not used, expire at the end of the fiscal year.

In addition to the numerical limits, Congress has also established per-country limitations for visas: no more than 7% of the total number of family-based or employment-based visas may be made available to citizens of any one country in a single fiscal year.  8 U.S.C. § 1152(a)(2). Due to this per-country cap, citizens of countries with higher numbers of applicants can experience longer wait times for visas.

Plaintiffs, 196 Indian and Chinese nationals, through approved Form I-140s, lawfully live and work in the United States.  Am. Compl. ¶¶ 8–19.  All seek to obtain lawful permanent resident status, and all have filed I-485 Applications for Adjustment of Status.  *Id.* ¶ 9.  In their Amended Complaint, filed on August 13, 2021, just over a month ago, Plaintiffs name as defendants USCIS and USCIS Director Ur Jaddou, alleging that they have unreasonably delayed adjudication of their I-485 applications, which they characterize as arbitrary and capricious agency action under the Administrative Procedure Act ("APA").  *Id.* ¶¶ 60–65.  Plaintiffs seek, as a first measure of relief, that each of their 196 petitions be adjudicated by September 30 of this year, which is to say within a few short weeks from the time they filed suit.

Among other things, Plaintiffs claim that USCIS was inadequately prepared to adjudicate the volume of applications it received during the 2021 fiscal year. *Id.* ¶ 39. As an alternative to adjudicating their applications before USCIS's fiscal year end on September 30, 2021, Plaintiffs ask the Court to order USCIS to "hold" visa numbers beyond the end of the fiscal year such that Plaintiffs may avail themselves of them. *See* Am. Compl. Defendants have responded with an omnibus motion, asking, to begin with, that the Court grant its motion to sever each Plaintiff's claim and transfer it to a more appropriate federal district court.

Plaintiffs presumably believe that venue in the District of Maryland is proper because Defendants are respectively a federal officer and an agency of the United States who reside in Maryland, and/or because a substantial part of the events or omissions giving rise to their claims occurred in Maryland. Am. Compl. ¶ 5. Specifically, Plaintiffs—albeit not in their Amended Complaint but in their Reply to Defendants' Motion to Sever and Transfer—assert that USCIS "policy" relative to the way their claims are being handled emanated from its headquarters in Maryland, which is to say Plaintiffs submit that their claims in fact occurred in Maryland. Reply at 6. Defendants, however, reiterate their argument: Because each visa application involves myriad individualized considerations, such as an applicant's personal background, employment history, and professional skills (as well as, in some cases, in-person interviews and the need for biometric measurements), severing their claims and sending them to the appropriate federal judicial districts is proper.[5] Defs. Mot. at 5–6. Defendants further suggest that these other venues are more appropriate because, as it is, Plaintiffs' applications are already being processed and

---

[5] "In general, USCIS's case processing tasks include (1) receiving the application or petition, collecting associated fees, entering data in case management systems; (2) conducting background and biometric checks and assessing the complexity of the case; (3) assessing the relevant individual's eligibility, identifying potential fraud or national security concerns, and scheduling an interview (if applicable); (4) interviewing the individual (if applicable); and (5) updating case management systems and issuing notices, requests, decisions and certificates." GAO Report, p. 9.

adjudicated in regional offices of USCIS, mainly at its Nebraska Service Center, Texas Service Center, and at several USCIS field offices in other federal judicial districts.  Defs. Mot. at 8–9.

## II.

A civil action brought against an officer or employer of the United States may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides if no real property is involved in this action."  28 U.S.C. § 1391(e)(1).  It is true that the named Defendants in this case "reside" in Maryland, but it is not necessarily true—indeed it is vigorously disputed— whether a substantial part of the events or omissions giving rise to the claims occurred in this district.  It is also true that, since no real property is involved, Plaintiffs could have filed this suit in the district where they reside, which they have quite definitively chosen not to do.  But in any event, deciding whether venue appropriately lies in the District of Maryland does not depend on whether one or more of these factors is/are literally met in a particular case.

For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer an action "to any other district division where it might have been brought."  28 U.S.C. § 1404(a).  The burden is on the moving party to show that transfer is warranted under § 1404(a). *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312 (4th Cir. 1984); *Lynch v. Vanderhoef Builders,* 237 F. Supp. 2d 615, 617 (D. Md. 2002).  The district court enjoys broad discretion to determine whether transfer is appropriate and considers: "1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties, and 4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791

6

F.3d 436, 444 (4th Cir. 2015); *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994).  The Court considers these factors in the present case, with the understanding that the burden is on Defendants to justify transfer.

<u>The Weight Accorded to Plaintiffs' Choice of Venue</u>

Typically, courts give deference to a plaintiff's choice of forum.  *See Piper Aircraft Co v. Reyno*, 454 U.S. 235, 265–66 (1981); *U.S. ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017).  Deference, however, is not particularly appropriate when "none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy."  *Salomon* at 774–75 (citing *Dicken*, 862 F. Supp. at 92–93) (internal citations omitted).  In particular, when a plaintiff chooses to bring suit in a forum that is not plaintiff's home forum, deference is less likely.  *Id.* at 775; *see also Lynch*, 237 F. Supp. 3d at 617 (citing *Dicken*, F. Supp. at 92–93).  In this case, all but three of the 196 Plaintiffs reside outside of Maryland and all of their applications—indeed, including those of the three Maryland residents[6]—are or were already pending or being processed outside of Maryland.  Defs. Mot. at

---

[6]  USCIS has 88 field offices, 16 district offices, and four regional offices around the country that process applications and petitions.  GAO Report, p. 8.  Additionally, the Field Operations Directorate's National Benefits Center processes some applications, including certain I-485.  *Id.*  Although USCIS maintains a field office in Baltimore, Maryland, applicants filing Form I-485 applications for permanent residence or adjustment of status—including applicants who reside in Maryland—are directed to file by mail at USCIS Lockbox Facilities or service center in other states, such as Texas and Arizona.  USCIS, *Direct Filing Addresses for Form I-485, Application to Register Permanent Residence or Adjust Status*, available at www.uscis.gov/forms/all-forms/direct-filing-addresses-for-form-i-485-application-to-register-permanent-residence-or-adjust-status.  Typically, once initial processing is complete at USCIS Lockbox Facilities or service centers, cases are forwarded to the Nebraska Service Center or Texas Service Center for further processing and adjudication.  USCIS, *EB I-485 Adjudications Overview*, available at www.uscis.gov/sites/Default/files/document/outreach-engagements/PED_Form_I-485_EB_Overview.pdf.

At times, USCIS moves some applications to different field offices in an effort to process the applications more promptly.  USCIS, *Field Offices*, available at www.uscis.gov/about-us/find-a-uscis-office/field-offices.

8–9.  Although Plaintiffs submit that they are challenging broader agency policy, Reply at 6, which, as the Court has noted, was not stated in their original or amended complaints, but only in the Reply to Defendants' Motion to Transfer, the relief they seek is clearly individualized in nature.  In essence, the only "policy" Plaintiffs complain of is that their applications are not being acted upon with sufficient dispatch, a claim that every visa applicant could make in every type of visa case where there is apparent delay.  In truth, the only connection to this forum Plaintiffs have is that USCIS headquarters and its Director are located in Maryland.  Importantly, Plaintiffs have not claimed that any particular act or decision affecting their applications—other than this very broad claim regarding agency policy—took place in Maryland.   In other words, their "policy" argument lacks merit.

<u>Witness Convenience and Access</u>

Convenience of the witnesses is "perhaps the most important factor to consider when analyzing a § 1404(a) motion to transfer venue."  *Salomon*, 268 F. Supp. 3d 775 (D. Md. 2017) (citing *Ralph v. Long*, Civ. No. 8:99-3281-DKC, 2001 WL 706034, at *3 (D. Md. June 14, 2001)).  Generally, when a defendant has shown that most of its key witnesses are residents of another district, motions to transfer are granted.  *Id.*  In a case involving review of an agency action, 'the location of witnesses is not a significant factor,' but 'the location of the administrative record, however, carries some weight.'"  *Melnattur v. United States Citizenship & Immigr. Servs.*, No. 20-cv-3013, 2021 WL 3722732, at *7 (D.D.C. Aug. 23, 2021) (citing *Aftab v. Gonzalez*, 597 F. Supp. 2d at 83 (D.D.C. 2009).  *See also Wolfram Alpha, LLC v. Cuccinelli*, 490 F. Supp. 3d. 324, 333 (D.D.C. 2020).

In the present case, any relevant administrative records will be located in the service centers or field offices where Plaintiffs' applications are currently pending, which is to say all the

8

records are outside of Maryland.  While witness testimony is not ordinarily relevant in matters arising under the APA, the fact remains that USCIS personnel who would be most aware of the status of a Plaintiff's application and delays in processing the application are clearly located at the various USCIS service centers and field offices around the country, not at USCIS headquarters in Maryland.  *See Melnattur* at *7; *Pasem v. USCIS*, No. 20-cv-344, 2020 WL 2514749 at *4 (D.D.C. May 15, 2020); *Akinyode v. United States Dep't of Homeland Sec.*, No. 21-cv-110, 2021 WL 3021440 at *4 (D.D.C. July 16, 2021).  Witness convenience and access, therefore, weigh heavily in favor of transfer after severance.

Convenience of the Parties

The convenience of the parties also favors transfer. "[T]his factor is chiefly operative in cases where the plaintiff chooses a forum away from (either party's) home."  *Dicken*, 862 F. Supp. at 93 (quoting *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Cond., Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988)).  In any event, the question of convenience of the parties is always one of the relative convenience of the parties.  *Dicken*, 862 F. Supp. at 93 (citing *Bd. of Trustees, Sheet Metal Workers Nat. Fund*, 703 F. Supp. at 1259.  To be sure, it would be more convenient for Plaintiffs (and Plaintiffs' counsel) to pursue their 196 claims in one court as opposed to several courts.  It would obviously be more efficient for them, given that they share at least some issues in common, e.g., how the concept of rollover of visas works, and a single proceeding certainly would be less costly.  But what of convenience to the Defendants?  Apart from limited manpower to process a large number of claims in Maryland with the dispatch

9

Plaintiffs ask for,[7] Maryland is not really set up to handle such claims at all.[8]   Again, the applications of Plaintiffs are already pending or being processed in the various USCIS service centers and field offices around the country and the administrative records are already there. Obviously, the various personalized determinations required of the applicants can more conveniently be made where the applications are already pending and/or being processed. Convenience of the parties, therefore, also militates in favor of transfer.

<u>Interest of Justice</u>

The "interest of justice" factor is broad, encompassing all the factors beyond Plaintiffs' preferred forum and the convenience of witnesses and parties, allowing the court to take into account several considerations.  *See Brock v. Entre Comput. Ctrs., Inc.*, <u>933 F.2d 1253, 1258</u> (4th Cir. 1991); *see also D2L Ltd. v. Blackboard. Inc.*, <u>671 F. Supp. 2d 768, 783</u> (D. Md. 2009). Here, with all respect, when Plaintiffs speak of the interest of justice, it is primarily from their

---

[7] On September 1, 2021, the Court convened a virtual conference on Zoom of counsel in virtually all visa application suits pending in Maryland federal district court, which also included representatives of the Office of the U.S. Attorney for the District of Maryland.  At the conference, Tracy Renaud, Deputy Director of USCIS, stated that, in particular, during the coronavirus pandemic, not only was the Agency's funding negatively impacted (as a user-supported agency, its revenues were down), a 4-month hiring freeze was put in place.  <u>ECF No. 27</u>.  "USCIS collects fees for processing most types of applications and petitions, which accounted for over 95 percent of its $4.8 billion budget in fiscal year 2020.  Due to the Coronavirus Disease 2019 (COVID-19) pandemic, USCIS received fewer applications causing revenues to decline in the spring of 2020, but rebounded to pre-pandemic levels by the end of summer 2020, according to USCIS data. Some of these revenue decreases were due to travel restrictions imposed by the U.S. and other countries following the pandemic emergency declaration, which resulted in fewer applications and petitions being received. Additionally, USCIS temporarily closed offices because of the pandemic, resulting in further decreases in fee collections."  GAO Report, p. 2.

Indeed, as Deputy Director Renaud pointed out on September 1, USCIS not infrequently on short notice must give priority to processing different types of visa requests at the direction of Congress and must do so without receiving payment of the ordinary user fee, as apparently has been the case with the raft of recent applications by Afghan refugees.  Ms. Renaud also noted that every time a federal court orders USCIS to expedite handling of an individual applicant's petition, personnel must be taken off other projects to accommodate the order.

[8]  *See* Note 6, *supra*.

personal standpoint.  They speak of wasted visas, inordinate backlogs, loss of jobs, separation of families, children being aged out of eligibility for visas and such. And while, to be fair, they express concern over delays in processing all visa applications, on the larger picture, Plaintiffs come up short.

First and foremost, courts have an interest in having local controversies decided at home. *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765 (D. Md. 2004) (citing *Brown v. Stallworth*, 235 F. Supp. 2d 453, 456 (D.Md. 2002) (internal citations omitted)).  The allegations in this case arise from alleged inaction in USCIS service centers and field offices around the country.  Plaintiffs themselves acknowledge that the majority of their applications are already pending or being processed at USCIS service centers in Texas and Nebraska.  In effect, what Plaintiffs request of this Court—that USCIS employees in Maryland be ordered to take over and promptly adjudicate applications already pending or being processed in service center or field offices around the country—in itself establishes that their controversies are more "local" in nature.

Plaintiffs' assertion that venue is appropriate in Maryland because USCIS's headquarters lie in Maryland finds scant support in the case law.  Courts in the District of Columbia have routinely granted motions to transfer where the only real connection of a plaintiff to the District is that a federal agency's headquarters are located in the District.  *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009) (citing *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C 2008).  While it may be that whether venue is appropriate in the judicial district where an agency's headquarters is located turns on whether an agency official personally involved in the decision-making process was also located in that judicial district, *Aftab*, 597 F.Supp. 2d at 81,

11

that is not the case here.  It is nowhere alleged that any USCIS personnel in Maryland were personally involved in processing any individual Plaintiff's application.

To repeat: The decision-making process for adjudicating visa applications occurs at USCIS's service centers and field offices throughout the country, not at agency headquarters in Maryland.  *See, e.g., Melnattur v. United States Citizenship & Immigr. Servs.,* 20-cv-3013, 2021 WL 3722732, at *5 (D.D.C. Aug. 23, 2021) (transferring to district in which application was adjudicated); *Akinyode v. United States Dep't of Homeland Sec.*, 21-cv-110, 2021 WL 3021440 (D.D.C. July 16, 2021) (same); *Pasem v. USCIS*, 20-cv-344, 2020 WL 2514749, at *3 (D.D.C. May 15, 2020) (same).

There are further considerations:

During a recorded telephone conference on September 14, 2021 between the Court, Plaintiffs' counsel in the present case, and the Assistant U.S. Attorney (AUSA) representing USCIS, the Court inquired of the AUSA, how many applicants for visa adjustments were situated similarly to the 196 Plaintiffs in this case.  *See* ECF No. 31.  Her response: There were approximately 250,000 such persons, some of whom were, so to speak, already "in line" ahead of Plaintiffs.  *Id.*  It is difficult to see how justice would be served if the Court were to grant relief to the eleventh hour request of these particular Plaintiffs, in preference to the thousands of others, many of whom may well be "in line" ahead of them.[9]

Finally, there is this: Given the thousands – perhaps better said, tens of thousands of visa application cases that might descend upon this District should the Court decide that this

---

[9] Of note, USCIS has invited the Court's attention to the fact that, most, if not all Plaintiffs in this case claim inordinate delays of 7 to 9 months on the part of USCIS in processing their claims.  Yet the median processing times posted for the Nebraska Service Center and the Texas Service Center are 12 and 25 months respectively.  Again, the relative justice of speeding up the processing of these 196 claims over those of many others similarly situated is hard to justify.

particular case belongs here, one or more members of this Court may be required to become full-time reviewers of these visa application cases, an outcome which would obviously derogate from the other important matters the Court must attend to.  A country-wide structure to accommodate the multiplicity of potential filings by visa applicants—the service centers and field offices—is already in place.  While it may be less convenient for applicants to have to pursue their claims in several forums, involving more time and more cost, overall, this arrangement for adjudication of the sort of claims Plaintiffs ask to have USCIS headquarters handle in Maryland is entirely reasonable.

## III.

Under Federal Rule of Civil Procedure 21, a district court has broad discretion in deciding whether to grant severance of a claim.  Fed. R. Civ. P. 21; *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506 (D. Md. 1995) (*citing United States v. O'Neill*, 709 F.3d 361, 369 (5th Cir. 1983)).  "In determining whether severance is proper, courts consider: "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed."  *Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007).  Claims may be severed if doing so "will serve the ends of justice and further the prompt and efficient disposition of litigation."  *CVI/Beta Ventures*, 896 F. Supp. at 506.

Essentially these factors have already been discussed in considering the propriety of transferring Plaintiffs' cases. While Plaintiffs share the common issue that they would like to

13

avail themselves of the rolled over visas for the current fiscal year, and while, as individuals, they would, in a sense, suffer prejudice if they cannot, the unalterable fact is that their claims involve different documentary proof and different witnesses such that USCIS and multiple other visa applicants would be prejudiced if Plaintiffs' claims are not severed.  To effectuate transfer of these cases, therefore, the Court will exercise its discretion and sever each of the claims of the 196 Plaintiffs into separate actions based on the USCIS location where the Plaintiff's application is pending or is being processed.  Each case will then be transferred to the federal judicial district for the region where service center or field office in which the claim is pending or being processed.[10]

**CONCLUSION**

While not unsympathetic to the fact that Plaintiffs' visa applications may not have been acted upon with the celerity Plaintiffs hoped for, Defendants have fairly demonstrated that Plaintiffs' claims should not be heard in Maryland.[11]

---

[10] The Court notes that since this suit was filed, the individual claims of some Plaintiffs have been approved. Among those approved were two of the three Plaintiffs residing in Maryland.  The Court hesitates, however, to find these and other already approved claims of individual Plaintiffs moot.  As with all Plaintiffs' claims, they will be transferred to the appropriate federal district court which can determine what further processing, if any, is required.

[11] The Court in no way means to suggest that USCIS has no substantial backlog problem in processing visa applications.  To remind: the full title of the recent GAO Report to Congressional Requesters is: "U.S. Citizenship and Immigration Services: Actions Needed to Address Pending Caseloads (emphasis added).  Page 1 of the GAO Report elaborates: "In recent years, Congress and stakeholders have raised questions about the size and growth of USCIS's pending caseload and the effects of its processing times on families and businesses who rely on the immigration system."  GAO Report, p. 1.  Still, the immediate issue in the present case is whether the petitions of certain applicants for employment-based visas from around the country should be adjudicated in Maryland, the headquarters of USCIS.  Whether USCIS needs to reform its structural arrangements of the sort implicated in this case is more properly a matter for the Agency to deal with internally or should be addressed pursuant to Congressional directive. In the context of the imminent expiration of the rolled over visas in the present case, see the recent opinion by the Editorial Board of the Washington Post: *Green cards are about to go to waste: Will anyone save them?*, WASH. POST., Sept. 22, 2021 at A26.

Accordingly, Defendants' Motion to Transfer is **GRANTED**.  Each of Plaintiff's claims will be **SEVERED** into a separate action according to the service center or field office where the Plaintiff's application is currently pending or being processed and then shall be **TRANSFERRED** to the federal district court covering those venues as set forth in the attachment to the Order supplementing this opinion.[12]

A separate Order will **ISSUE**.

Date: September 29, 2021

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

---

[12] Given the Court's disposition of the case, there is no need to address the merits of Plaintiffs' request for a Preliminary Injunction.